**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DAQUAN BROWN, | Case No. 1:24-cv-316 |
| Plaintiff, | McFarland, J.<br>Bowman, M.J. |
| v. | |
| CINCINNATI POLICE DEPARTMENT, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

On June 7, 2024, Plaintiff DaQuan Brown, proceeding pro se, filed an application seeking to initiate the above-captioned case *in forma pauperis*, or without payment of a filing fee. By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. This matter is now before the Court for a sua sponte review of the complaint to determine whether the complaint, or any portion of it, should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). For the reasons discussed below, the undersigned recommends that claims against four Defendants be permitted to proceed for further development, with claims against all other Defendants to be dismissed for failure to state a claim.

**I. The Screening Standard**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying

litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. § 1915(e)(2)(B)(i). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327.

Congress also has authorized the sua sponte dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept

2

all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

II. **Plaintiff's Complaint**

Plaintiff tendered a pro se civil rights complaint form that identifies the parties and the relief she seeks, (Doc. 1-3 at PageID 80-83), along with summons forms. (*See id.* at PageID 38-79). Plaintiff's complaint identifies the following thirteen Defendants: (1) the Cincinnati Police Department; (2) Jacob Hicks; (3) Jeffrey Wicezorkowski; (4) Emily Ward; (5) Elsa Esser (6) Christopher Wermuth; (7) Dustin Pect; (8) Michael Miller; (9) P361; (10) Douglas White; (11) Arron Roach; (12) Justin Gottman; and (13) Millenium Towing.

The complaint form identifies the basis for federal jurisdiction as 42 U.S.C. § 1983. Plaintiff states that she seeks the following injunctive relief and monetary damages: "I want the court to order CPD to terminate the officers involved, make policy changes, award damages for intentionally causing severe distress, remove negative filed CPD hold, drop charges/remove probation, order stay away order." (Doc. 1-3, PageID 83). However, rather than setting forth her allegations on the complaint form itself, Plaintiff references

3

an attachment – a separately filed document consisting of 32 unnumbered hand-written single-spaced pages. Although the referenced attachment lacks a caption, the pages have been docketed as her "complaint."[1] Within the body of that document, Plaintiff also seeks punitive damages. (Doc.. 1-1, ¶¶54-57, PageID 21).

Plaintiff's lengthy complaint is difficult to follow, but has been liberally construed as written. Most of the allegations are contained in sequentially numbered paragraphs, and are written below fifteen headings/subheadings that are presumed to set forth Plaintiff's combination of state and federal claims[2]: (1) Background Facts and Ohio R.C. §2921.31[3]; (2) Retaliation; (3) Tortious Interference With a Business Relationship; (4) False Arrest under the Fourth Amendment; (5) Excessive Force under the Fourth Amendment (; (6) First Amendment Violation; (7) Failure to Intervene with Excessive Force; (8) Intentional Infliction of Emotional Distress; (9) Racial Profiling; (10) Punitive Damages; (11) Excessive Force and Retaliation under the First Amendment; (12) Discrimination; (13) Tampering with Evidence; (14) Fourth Amendment Violation; and (15) Deprivation.

Although judicial economy precludes setting forth the entirety of Plaintiff's allegations, the undersigned relies on Plaintiff's "Background Facts" (¶¶1-23 at PageID 1-10) as a summary of her allegations. Pursuant to that summary, Plaintiff's claims began with an incident that occurred on January 8, 2024, when the Cincinnati Police Department responded to a "911, domestic violence call." (Doc. 1-1, ¶ 1). Three Defendants, identified

---

[1] It appears that the original complaint form itself was inadvertently and erroneously filed with the tendered summons forms at Doc. 1-3, PageID 80-83, instead of being filed as the first pages of Doc. 1-1.
[2] Spelling and grammatical errors in the headings have been corrected for readability.
[3] The heading "Background Facts" appears to encompass Paragraphs 1-24. A subheading under ¶ 1 reads "Section 2921-31" and is construed as a reference to an Ohio Revised Code provision concerning the offense of Obstructing Official Business.

as Caucasian officers named Emily Ward, Dustin Pect and Christopher Wermuth, appeared at the "Eatondale site" with the "alleged victim Kayla Gill (African American)." (*Id.*) Plaintiff, who also identifies as African American, was in her brother's (Romero Tyler's) apartment at the time. Defendants assisted Ms. Gill in entering the apartment to retrieve Ms. Gill's belongings even though Plaintiff alleges she informed Defendants that Ms. Gill was not a leaseholder and (in Plaintiff's view) could not give consent to enter the apartment. Plaintiff alleges that CPD Officials ignored her protestations and "proceeded to force their entry." (*Id.*) Plaintiff alleges that after she expressed her alleged Fourth Amendment rights,[4] Defendant Wermuth became angry "and unlawfully removed me from my brother['s] home." (*Id.*) Plaintiff clarifies that she was not detained or arrested and was permitted to leave. (*Id.*) She further alleges that officers subsequently learned from Ms. Gill of "open warrants I had" and later "filed an obstructing official business charge against me" under Ohio R.C. § 2921.31. (*Id.*)

Plaintiff alleges that in support of the obstruction charge, Defendant Wermuth stated that Ms. Brown was standing in the doorway during the officers' active domestic violence investigation. Plaintiff alleges that statement was "untrue" because she was standing there "because CPD Officials were acting under color of law, interfering with" her alleged Fourth Amendment rights by failing to properly investigate the domestic violence claim. (Doc. 1-1 at ¶¶2-6). Plaintiff alleges that CPD officials failed to accept her offer to retrieve Ms. Gill's belongings even though "my brother had left me to care for his home while he was away." (*Id.*, ¶7). She states that CPD officials charged her brother with assault and domestic violence, but charges were eventually dismissed. (*Id.*, ¶ 9).

---

[4]Plaintiff also refers to her rights under the "U.S.C." which the undersigned infers to be a reference to the U.S. Constitution.

Based on the January 8 incident, Plaintiff filed a complaint for misconduct and excessive force with CPD Internal Affairs on January 9, 2024. (*Id*., ¶ 10). CPD allegedly retaliated by placing her "under Federal investigations" and "having CPD officials spy on me at work." (*Id.*) She alleges that unspecified CPD officers arrived at her workplace (the Eatondale apartment complex) and asked for her identification, questioning her about her employment. When she called a manager, CPD officials began questioning him and falsely told him they had received a loud noise complaint. (*Id.*, ¶¶ 11-12). CPD allegedly "deployed two officials from district 4 (CPD) to spy on me" at another worksite. (*Id*., ¶ 13).

Shortly after an internal affairs investigator interviewed Plaintiff about her January complaint, "CPD and [nonparty] ATF responded… by escalating their harassment." (*Id.*, ¶ 14). Plaintiff alleges that in March 2024, CPD began using informants to "track and harass me," by having Eatondale and/or UC employees "ask children they suspected sold drugs for me, for coke," and additionally have "informants go steal cars with those children." (*Id.*, ¶ 15). During a subsequent investigation "CPD and ATF learned…that I was not the reason[] for [the child's] behavior," and "that I was not the kind of person that they suspected me to be." (*Id.*, ¶ 16).

Plaintiff further alleges that as part of the same retaliatory "harassment," CPD "had officials and ATF agents [pose] as kidnappers" in March 2024, in an incident in which an ATF agent drove up at high speed and yelled that Plaintiff was going to go to jail for aggravated robbery. The agent allegedly changed course when Plaintiff pulled out her phone and told him to get back. (*Id*., ¶ 17). During the same time period, Plaintiff alleges that CPD instructed "informants" to target Plaintiff and harass her while she was out for drinks at a local bar, which harassment included "dirty gestures, bumping into me and

6

following me around the bar," as well as individuals in ski masks waiting outside the bar who also gave her "dirty gestures" and taunted her. (*Id*., ¶ 18).

Plaintiff alleges that her additional complaints against the CPD resulted in an escalation of harassment of her and her brother by CPD and ATF, including entering her brother's home without a warrant in April 2024. (*Id*., ¶ 19-20). She alleges that the two agencies "began using traffic lights and street lights to capture pictures" of her and "would violate friends and family 4th Amendment and record from their cameras," and would "tap into their phone calls and pick up voice reception." (Id., ¶ 21). She also alleges that in May 2024, "CPD along with [Millenium] towing stole me and my brother food truck," refusing to return it, that CPD official Elsa Esser committed battery by putting his hand "on me and my brother" while continually trying to find reasons to arrest and harass the two of them. (*Id.*, ¶ 22).

In an unnumbered narrative addendum to the alleged "Background Facts," Plaintiff reiterates and expands upon her allegations as follows:

> CPD escalated their harassment and began targeting me and my family for allege[d] crimes suggested by the CPD. CPD began having their helpers follow us, while taunting and recording us. CPD also allowed other[s] to track and harass us through our car apps radio and phone gps. …After filing multiple complaints against CPD, CPD place me, my brother, Family, child mother and others under Federal investigation. CPD began having others willfully depriving us of our protected rights and privileges. CPD also start having people intentionally harass us to get reactions out of us. During CPD harassment, CPD and Federal agents would also use radios to record lyrics from songs playing on the radio…. The radios would began to tune out and static on certain songs. Also would remove bass. During CPD harassment, informants would continually ask for drugs and guns, helpers would continually taunt us and companies that would help CPD, would continually help deprive us of our protected rights and privileges.

(Doc. 1-1 at 7, PageID 10).

7

**III. Analysis**

"To state a viable claim under 42 U.S.C. § 1983, a plaintiff 'must allege that ?he was deprived of a right secured by the Federal Constitution or laws of the United States by a person acting under color of state law.'" *Smith v. Detroit Entertainment L.L.C.*, 338 F.Supp.2d 775, 778 (E.D. Mich. 2004) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992)). Here, many of Plaintiff's allegations that other individuals (including but not limited to Plaintiff's brother, friends, associates, and other family members) were deprived of their constitutional rights. But a pro se party cannot represent the rights or interests of anyone other than herself. Therefore, she fails to state a claim with respect to any actions allegedly taken by any Defendant against third parties. In addition, many of the allegations refer vaguely to unidentified or unknown Cincinnati Police Department "informants" or "helpers" or to other nonparties such as ATF agents. To the extent that Plaintiff complains of actions by nonparties, she fails to state a claim against any named Defendant.

Plaintiff also falls short when it comes to specific factual allegations against most of the named Defendants, including the Cincinnati Police Department. In terms of capacity, the Cincinnati Police Department is "a mere arm of the City" and "not its own entity" and is therefore "not capable of being sued." *Hale v. Vance*, 267 F.Supp.2d 725, 737 (S.D. Ohio 2003); *see also Rhodes v. McDaniel*, 945 F.2d 117, 12 (6th Cir. 1991) (Police Departments are part of a larger political subdivision and cannot be sued). But even if construed as a suit against the City of Cincinnati, Plaintiff fails to state any cognizable claim under 42 U.S.C. § 1983. While the City of Cincinnati is a governmental entity that could theoretically act under color of state law, "a local government may not be

8

sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom ... inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir.1989). Plaintiff does not allege any specific policy or custom by the Cincinnati Police Department that allegedly caused her injuries. And this Court will not infer allegations that are not pleaded. *Accord Stump v. City of Mount Vernon*, 2019 WL 176325, at *2 (S.D. Ohio Jan. 11, 2019) (dismissing on initial screening complaint where plaintiff failed to allege that any official policy or custom resulted in the violation of his constitutional rights). For the same reasons, none of the individual Defendants can be held liable in their official capacities under § 1983 absent the assertion of a clear "policy or custom" that caused the injury.

Plaintiff also has named Millennium Towing as a Defendant. The only allegation against this entity is that in May 2024, "CPD along with [Millenium] towing stole me and my brother food truck," and refused to return it. This single allegation is insufficient to state a claim under 42 U.S.C. § 1983 because a private towing company does not act under color of state law.

Turning next to the individual Defendants, Plaintiff fails to include sufficient factual allegations to state a claim against seven of them.[5] Identifying who harmed the plaintiff and how they did so is a "basic pleading essential" required to state a claim. *Wells v.*

---

[5] Plaintiff does not identify the capacity in which the individual Defendants have been named and continually refers to them as CPD officials. While not necessarily definitive, her references suggest that the officers may be named solely in their official capacities. *See generally*, *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001) (internal citations omitted); *see also Donaldson v. City of Dayton Ohio Police Dept.*, No. 3:22-cv-368-WHR-PBS, 2023 WL 2925124, at *4 n.3 (S.D. Ohio, April 13, 2023), R&R adopted at 2023 WL 3205208 (S.D. Ohio, May 2, 2023)

9

*Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Wal-Mart Stores, Inc.*, 507 Fed. Appx. 543, 547 (6th Cir. 2012) (courts "are not required to conjure up allegations not pleaded or guess at the nature of an argument."). "The Sixth Circuit 'has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege...facts that demonstrate what *each* defendant did that violated the asserted constitutional right.'" *Reid v. City of Detroit*, No. 18-13681, 2020 WL 5902597, at *6 (E.D. Mich. Oct. 5, 2020) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (emphasis in original). That is, Plaintiff must show that the alleged violation of his constitutional rights "was committed *personally*" by the defendant. *Id*. (emphasis in original); *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (persons sued in their individual capacities under § 1983 are liable only for their own unconstitutional behavior) (citations omitted).

Plaintiff's complaint appears to lack <u>any factual allegations at all</u> against Michael Miller, Douglas White, Arron Roach, and Justin Gottman. Therefore, Plaintiff has failed to state any claim against those four Defendants.

Plaintiff's only allegation against Defendant Police Officer P361 appears to be that during a May 20124 encounter with Plaintiff and her brother that also involved Defendant Elsa Esser, Officer P361 "reached for his gun and lifted it." (Doc. 1-1, ¶22, PageID 9). Plaintiff alleges that once she confronted him, the "official realize[d] he was on video and tried say he was fixing his belt." (*Id.*) This single allegation concerning an allegedly fleeting display of an officer's weapon is insufficient as a matter of law to state any claim.

Plaintiff's primary allegations against Defendants Jacob Hicks and Officer Jeffrey Wicezorkowski fall under the heading "Retaliation" (*see* Doc. 1-1, ¶¶24-29). Plaintiff

10

alleges that she filed multiple complaints in 2021 and 2022 against unidentified CPD officials "after numerous incidents with CPD officers…." (*Id.*, ¶ 27). She states that on or about March 16, 2022, Defendants Hicks and Wicezorkowski and another unidentified official "from CPD "'Gang Unit' held a private meeting with my [former] regional manager…and [former] supervisor" at Eatondale apartment complex where Plaintiff was then employed. (*Id.*, ¶28; *see also* ¶ 31, alleging "tortious interference with a business relationship). Allegedly as a result of statements made by Hicks and Wicezorkowski during that March 2022 meeting, Plaintiff was eventually demoted by her employer and was terminated on August 4, 2022. (*Id.*) In Ohio, however, the statute of limitations for a claim brought under 42 U.S.C. § 1983 is two years. *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (citing *Owens v. Okure*, 488 U.S. 235 (1989)). Therefore, even if a claim were otherwise stated, a claim based on Defendants' March 2022 alleged meeting with Plaintiff's supervisors would be time-barred.[6]

That leaves Defendants Christopher Wermuth, Emily Ward, Dustin Pect, and Elsa Esser. Broadly speaking, many of Plaintiff's claims arise from the January 8, 2024 incident involving a response to a domestic violence call at her brother's apartment by three of the Defendants. Many of Plaintiff's allegations are rambling, vague and conclusory in their assertion of various constitutional violations,[7] with some allegations appearing to fall

---

[6]Plaintiff includes a second cursory reference to Defendants Hicks and Wicezorkowski in paragraph 49, wherein Plaintiff alleges that the same two Defendants committed the tort of intentional infliction of emotional distress in violation of state law in both "2022 [and] 2024." But because Plaintiff includes no factual details to support the entirely conclusory allegation that the referenced Defendants did anything in 2024, the undersigned recommends dismissal of all claims against Defendants Hicks and Wicezorkowski for failure to state a claim.

[7]For example, despite captioning one of her claims as "False Arrest," Plaintiff alleges that she was not arrested or detained, and was permitted to leave on January 8, 2024. (Doc. 1-1, ¶ 1). Plaintiff alleges that she was later wrongfully charged with "obstruction," but it is not clear whether she was ever convicted of that charge.

11

within the category of "fantastic or delusional."[8] But not every allegation can be summarily dismissed. For example, Plaintiff specifically alleges that "Christopher Wermuth used force and unlawfully removed me from my brother['s] home and caused physical injuries and trigged [sic] my PTSD." (Doc. 1-1, ¶39; *see also id*., ¶45). Plaintiff further alleges that Defendants Emily Ward and Dustin Pect accompanied Defendant Wermuth and failed to intervene to prevent the excessive use of force. (*Id*., ¶¶43-46). It appears that Plaintiff also alleges subsequent retaliatory conduct based on her refusal to permit officers to enter her brother's apartment, and/or based on her filing a complaint with Internal Affairs the next day. At this stage in the proceedings, without the benefit of briefing by the parties to this action, the undersigned concludes, in an abundance of caution, that Plaintiff's claims against Defendants Wermuth, Ward and Pect are deserving of further development.

In addition, and again, in an abundance of caution at this preliminary stage of review, the undersigned will permit Plaintiff's claims against Defendant Elsa Esser to proceed. Unlike Defendant P361 who is alleged only to have momentarily displayed his gun during the May 2024 encounter, Plaintiff alleges that Defendant Elsa Esser "put his hand on me" during the same encounter. (*Id*., ¶22).

The undersigned has concluded that some of Plaintiff's allegations contain sufficient factual detail to hypothetically support one or more claims against four of the identified individual Defendants. That said, the undersigned acknowledges that a number

---

[8]The Court need not accept as true factual allegations that are fantastic or delusional in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)). Because Plaintiff's more "fantastic" allegations concern either third-party victims or involve allegations against alleged "helpers" and "informers" who are not named Defendants, and/or are dismissed on other grounds, the undersigned declines to further parse through those allegations at this stage of the proceedings.

12

of claims appear to be somewhat if not completely duplicative. And it is not at all clear that all state and federal claims are properly asserted against all four Defendants. But mindful of the limitations of sua sponte review under 28 U.S.C. § 1915(e)(2)(B), the undersigned declines to further parse through Plaintiff's claims at this time. In short, this preliminary determination is not to be construed as a ruling on the merits of any future dispositive motions that may be filed by any party.

IV. **Conclusion and Recommendation**

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. All claims against all Defendants <u>except for Defendants Wermuth, Ward, Pect and Esser</u> should be DISMISSED with prejudice for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B);

2. Consistent with the Order directing service on Plaintiff's behalf, Plaintiff's claims against Defendants Wermuth, Ward, Pect and Esser should be permitted to proceed for further development at this time.

<u>s/Stephanie K. Bowman</u>
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

DAQUAN BROWN,

    Plaintiff,

  v.

CINCINNATI POLICE DEPARTMENT, et al.,

    Defendants.

Case No. 1:24-cv-316

McFarland, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).